**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Destiny McDade and Jonathan Riemann, Defendants,

Of whom Jonathan Riemann is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2016-001506

———————————

Appeal From Spartanburg County
Phillip K. Sinclair, Family Court Judge

———————————

Unpublished Opinion No. 2017-UP-468
Submitted December 1, 2017 – Filed December 20, 2017

———————————

**AFFIRMED**

———————————

Melinda Inman Butler, of The Butler Law Firm, of Union, for Appellant.

Deborah Murdock Gentry, of Murdock Law Firm, LLC, of Mauldin; and Robert C. Rhoden, III, of South Carolina Department of Social Services, of Spartanburg, both for Respondent.

Wendy Nicole Griffith, of Talley Law Firm, P.A., of Spartanburg, for the Guardian ad Litem.

_____

**PER CURIAM:** Jonathan Riemann (Father) appeals the family court's final order terminating his parental rights to his minor child (Child). On appeal, Father argues the family court erred in finding (1) his rights should be terminated based on his failure to remedy the conditions causing removal when the removal was based on Destiny McDade's (Mother's) drug use and Father's actions did not cause the removal, (2) the Department of Social Services (DSS) proved by clear and convincing evidence Father failed to support Child, and (3) termination of parental rights (TPR) was in Child's best interest when there is a fit parent Child can be reunited with. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

We find clear and convincing evidence shows Father failed to remedy the conditions causing Child's removal. *See* S.C. Code Ann. § 63-7-2570(2) (Supp. 2017) (providing a statutory ground for TPR is met when "[t]he child has been removed from the parent pursuant to subarticle 3 or [s]ection 63-7-1660 and has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between [DSS] and the parent[,] and the parent has not remedied the conditions which caused the removal"). Initially, we disagree with Father that this ground cannot apply to him because Child was removed from Mother. Although the plain language of the statute could support his interpretation, we find doing so would contradict the General Assembly's mandate to construe TPR statutes liberally "to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship." *See* § 63-7-2570(2) (providing a statutory ground for TPR is met when "[t]he child has been removed from the parent . . . ."); S.C. Code Ann. § 63-7-2620 (2010) ("This article must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child

relationship. The interests of the child shall prevail if the child's interest and the parental rights conflict."). This was not a situation when DSS removed a child from one parent and arbitrarily decided not to place him with the other parent. Rather, DSS could not initially place Child with Father because he was incarcerated, and we find Father's incarceration was a collateral reason for Child's removal. When Father was released from incarceration, DSS could not reasonably place Child with Father until further investigating why he was on the sex offender registry. The family court ordered a placement plan in May 2015 that required Father to submit to a psychosexual evaluation. Based on the fact Father was on the sex offender registry, it was reasonable for DSS to request and the family court to order a psychosexual evaluation prior to placing Child in Father's home. Although Father completed a psychosexual evaluation as part of his criminal case, he did not submit it to DSS or the family court; thus, the family court had no way to determine how—and whether—Father's registry affected his ability to parent Child.

We also find Father did not maintain stable housing, as required by the May 2015 placement plan. Cindy Britton, a DSS foster care worker, explained Mother and Father did not have stable housing prior to DSS initiating the removal action, and DSS had trouble locating Mother, Father, and Child prior to Father's incarceration because the addresses they provided were incorrect. Britton also testified Father refused to provide his address to DSS after he was released from prison. Thus, we find lack of stable housing was one of the conditions that had to be remedied before Child could be placed with Father, and Father's failure to obtain appropriate housing prior to six weeks before the TPR hearing supports this ground. Overall, Father's failure to obtain stable housing and submit to a psychosexual evaluation or provide the results to DSS constitutes clear and convincing evidence to support this ground.[1]

Finally, viewed from Child's perspective, we find TPR is in Child's best interest. *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) (providing the best interest of the child is the paramount consideration in a TPR action); § 63-7-2620 ("The interests of the child shall prevail if the child's interest and the parental rights conflict."); *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013) ("Appellate courts must

---

[1] We decline to address the remaining TPR ground. *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 613, 582 S.E.2d 419, 425 (2003) (declining to address additional grounds for TPR when clear and convincing evidence justified TPR on another ground).

consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate.").  Although Father regularly visited Child and the testimony showed Child was bonding with him, we find it was unlikely Father could provide a suitable home for Child.  Although Father's registry on the Sex Offender Registry may not in and of itself preclude his ability to provide for Child and parent him, we find it was necessary for Father to submit to and disclose to DSS and the family court the results of a psychosexual evaluation before Child could safely be placed with Father.  Father had eleven months between the May 2015 placement plan and the April 2016 TPR hearing, and he did not do so.  Further, Father's failure to maintain stable housing is problematic, and it is questionable whether he could maintain stable housing if Child were returned to his custody.  Finally, the undisputed evidence showed Child was bonded with his foster family and they were willing to adopt him; thus, it appears Child will achieve stability through adoption if TPR is affirmed.  Based on Child's need for permanency and viewed from Child's perspective, we find TPR is in his best interest.

**AFFIRMED.**[2]

**SHORT, KONDUROS, and GEATHERS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.